**Ben GOODMAN, Plaintiff–Appellant,**

v.

**Louis SULLIVAN, Secretary of Health and Human Services, Defendant–Appellee.**

**No. 230, Docket 89–6112.**

United States Court of Appeals, Second Circuit.

Argued Oct. 24, 1989.

Decided Dec. 12, 1989.

John F. McHugh, New York City, for plaintiff-appellant.

Linda A. Riffkin, Sp. Asst. U.S. Atty., Benito Romano, U.S. Atty., S.D. of N.Y., Edward T. Ferguson, III, Asst. U.S. Atty., New York City, for defendant-appellee.

Before OAKES, Chief Judge, and KEARSE and ALTIMARI, Circuit Judges.

PER CURIAM:

Plaintiff, Ben Goodman, appeals from an order of the United States District Court for the Southern District of New York, John M. Walker, Jr., Judge, dismissing plaintiff's challenge to a regulation under the federally funded health insurance program commonly known as "Medicare Part B," *see* 42 U.S.C. §§ 1395j–1395w–3 (1982 & Supp. V 1987), that excludes coverage for experimental, investigative, or unproven procedures. *See Medicare Part B Carrier's Manual, Coverage Issues Appendix;* Medicare Part B Intermediary Letter, No. 77–7, *cited in* Decision of Medicare Hearing Officer (No. 8801301001) (May 11, 1988). We affirm the district court's order.

Goodman alleges that he underwent a magnetic resonance imaging ("MRI") procedure as a matter of medical necessity in order to diagnose the cause of his speech impediment problem. Unable to determine from X-rays or CAT scans whether the speech impediment was traceable to a mild stroke, Goodman's doctor determined that further diagnostic procedures were required. Because he considered an angiogram too risky, the doctor recommended

that Goodman undergo an MRI procedure. Goodman underwent the MRI procedure on February 8, 1985, even though he was aware that MRI was not then covered under the Medicare Part B program. *See Medicare Part B Carrier's Manual, Coverage Issues Appendix* § 50–12(E) (June 1985). Several months later, on November 22, 1985, the Secretary of Health and Human Services ("the Secretary") extended coverage to MRI procedures. *See Medicare Part B Carrier's Manual, Coverage Issues Appendix* § 50–13 (Nov. 1985), *reprinted in* 54 Fed.Reg. 34,584 (Aug. 21, 1989).

Goodman's claim for $675 in reimbursement for the MRI procedure was denied on May 11, 1988 by a hearing officer. Subsequently, he filed an action in the district court, seeking review of the denial of benefits pursuant to 42 U.S.C. § 405(g) (1982). The district court dismissed the action by judgment on the pleadings on April 17, 1989. 712 F.Supp. 334.

On appeal, Goodman contends that the Secretary's regulation violates statutory mandates requiring the Secretary to provide coverage for all medically necessary services and prohibiting the Secretary from using the Medicare program to supervise or control the practice of medicine.

## DISCUSSION

◼ Under the Medicare program, Congress has excluded from coverage all items and services "not reasonable and necessary for the diagnosis or treatment of illness or injury." 42 U.S.C. § 1395y(a)(1)(A) (Supp. V 1987). In interpreting this provision, pursuant to his authority to prescribe regulations, *see* 42 U.S.C. § 1395hh(a) (Supp. V 1987), the Secretary of Health and Human Services has prohibited payment of benefits for any experimental, investigational, or unproven treatment or diagnostic method not yet generally accepted in the medical profession. *See Medicare Part B Carrier's Manual, Coverage Issues Appendix;*

Medicare Part B Intermediary Letter, *supra,* No. 77–7.

Goodman's first ground of appeal is that because Congress requires Medicare to cover all medically necessary services, the Secretary may not deny coverage for experimental or unproven procedures that a physician determines to be medically necessary. We are not directed to any provision in the Medicare statute expressly requiring coverage for all medically necessary services. Moreover, we do not think that such coverage is mandated by implication. The prohibitory language of § 1395y(a)(1)(A), which bars benefits for services "not reasonable and necessary" for diagnosis or treatment, is not reasonably interpreted as an affirmative mandate to extend coverage to all necessary services.

Goodman relies heavily on *Rush v. Parham,* 625 F.2d 1150 (5th Cir.1980). Although the *Rush* court drew some parallels between the two programs, the case before it was a challenge under the Medicaid program, not the Medicare program. The court never reached the issue of whether Medicaid must cover all medically necessary procedures. *See id.* at 1155 & n. 9.[1] Rather, it found that even if Medicaid required such coverage, a regulation "may adopt a definition of medical necessity that places reasonable limits on a physician's discretion ... [such as] a ban against reimbursement for experimental forms of treatment...." *Id.* at 1154–55 (footnote omitted). Moreover, the court nowhere stated, as Goodman contends, that a policy banning reimbursement for experimental forms of treatment must be subject to an exception for exigent circumstances. Exceptions were permissible only if the policy itself provided for exceptions. *See id.* at 1157. Finally, the court acknowledged that Congress intends the physician to be a key figure in determining what services are needed and consequently reimbursable, but deference to a physician's judgment is appropriate only in the absence of a policy

---

**1.** At issue in *Rush* was a provision in the Medicaid statute, now codified at 42 U.S.C. § 1396 (Supp. V 1987) and lacking a parallel in the Medicare statute, that plaintiffs there read as requiring coverage for all medically necessary provisions.

barring coverage for experimental procedures. *See id.*[2]

Because we find the Medicare statute does not require coverage for all medically necessary procedures, it is not necessary to consider, as Goodman urges, whether the Secretary's regulation prohibiting coverage for experimental procedures impermissibly establishes an irrebuttable presumption that such procedures are not medically necessary, and whether the regulation must allow exceptions based on individual hearings showing medical necessity.

Turning to Goodman's second ground for appeal, we cannot agree that the regulation impermissibly interferes with the practice of medicine. Goodman relies on 42 U.S.C. § 1395 (1982), which provides: "Nothing in this subchapter shall be construed to authorize any Federal officer or employee to exercise any supervision or control over the practice of medicine or the manner in which medical services are provided...."

Here the Secretary's regulation does not presume to supervise or control the practice of medicine. The regulation does not actually direct or prohibit any kind of treatment or diagnosis. It only refuses subsequent Medicare reimbursement for certain kinds of services. This may influence some medical decisions, but if tangential influence alone violates § 1395, then the Secretary would scarcely be able to regulate the Medicare program at all. The ostensible purpose of the regulation here is not to stifle technological change, to favor one procedure over another, or to influence the judgment of medical professionals. Rather, its purpose is to carry out the statutory mandate of excluding coverage for services that are not reasonable or necessary. Because the government could not possibly adjudicate on a case-by-case basis whether a given procedure is "not reasonable and necessary," the Secretary, in order to execute faithfully the mandates of the Medicare statute, necessarily must paint with a broad brush by issuing regulations specifying certain services as per se not reasonable or necessary, such as those which are experimental and not yet generally accepted in the medical community.

Medical technology is constantly changing. Hindsight of course is 20/20. Today MRI technology is widely recognized as an indispensable diagnostic tool. The Secretary, however, was not indifferent to the changing status of MRI technology. The record reflects that the Secretary vigilantly monitored its progress and made a considered judgment that it was not yet generally accepted when Goodman underwent the MRI procedure. Prior to November 1985, the Manual specifically listed MRI and diagnostic imaging techniques as experimental technologies and noted, "As advances in these technologies are made, HCFA [the Health Care Financing Administration] will consider them for coverage under Medicare." *Medicare Part B Carrier's Manual, Coverage Issues Appendix* § 50–12(E) (Aug.1982). Not long after Goodman underwent the procedure, coverage was indeed extended to MRI.

■ We do not see why the Secretary would be bound, as Goodman contends, by any earlier acceptance of MRI by the Food and Drug Administration. "Unless contrary to the indications of the statute itself, ... the construction and application of a statute *by the agency charged with its administration* is entitled to substantial deference." *Grocery Mfrs. of Am., Inc. v. Gerace,* 755 F.2d 993, 1001 (2d Cir.) (citations omitted) (emphasis added), *cert. denied,* 474 U.S. 820, 106 S.Ct. 69, 88 L.Ed.2d 56 (1985).

Finally, Goodman's equal protection argument is without merit. He neither identifies the class denied equal protection of the laws nor persuades us that the regulation does not rationally serve a legitimate governmental purpose.

2. In *Hultzman v. Weinberger,* 495 F.2d 1276 (3d Cir.1974), cited by Goodman, the Third Circuit never considered whether § 1395y(a)(1)(A) affirmatively requires payment for all medically necessary services. Rather, it determined that the Secretary erred, after finding that a particular service was in fact reasonable and necessary, in further conditioning reimbursement on the service being provided on a less costly outpatient rather than inpatient basis. *See id.* at 1281–82.

The judgment of the district court is affirmed.