UNITED STATES ex rel. Patricia
MIKES, and Patricia S. Mikes,
Individually, Plaintiffs,

v.

Marc. J. STRAUS, Jeffrey M.
Ambinder, and Eliot L.
Friedman, Defendants.

No. 92 Civ. 2754(CM).

United States District Court,
S.D. New York.

Dec. 10, 1999.

Harold R. Burke, Holland, Kaufmann &
Bartels, Greenwich, CT, Philip Dale Rus-
sell, Russell & Wells, Greenwich, CT, for
Plaintiff.

David J. Meiselman and Barry Cepelew-
icz, Meiselman, Farber, Packman & Eberz,
P.C., Mt. Kisco, NY, for defendants.

## ORDER DENYING RELATOR'S MOTION FOR RECONSIDERATION

McMAHON, District Judge.

On November 18, 1999, this Court dis-
missed Relator's claims under the False
Claims Act, 31 U.S.C. § 3729 *et seq.*,
against her former employers. The facts
of this case, with which familiarity is as-
sumed, are discussed in that memorandum
decision and order. Relator has moved for
reconsideration pursuant to Federal Rule
of Civil Procedure 59(e) and Local Rule
6.3.[1] The United States, which had previ-

**1.** Relator's counsel in fact brought this mo-
tion under Fed.R.Civ.P. 54(b) (Relator's Br. at
1.). While there is no clear indication of
which Rule applies to a motion for reconsid-
eration, courts generally consider a motion
for modification of the judgment to be either
a Rule 59(e) motion to alter or amend the
judgment, or a Rule 60(b) motion for relief
from a judgment or order. *See Retarded Citi-
zens of Connecticut, Inc. v. Thorne*, 68 F.3d
547, 553 (2d Cir.1995). Rule 54(b), by con-

trast, empowers a district court to enter final
judgment on one or more but less than all
claims in a suit, or as to one or more but less
than all the parties in the action. The pur-
pose of Rule 54(b) is "to avoid the possible
injustice of a delay in entering judgment on a
distinctly separate claim or as to fewer than
all of the parties until the final adjudication of
the entire case by making an immediate ap-
peal available." *See Nat'l Asbestos Workers
Medical Fund v. Philip Morris, Inc.*, 71

ously declined to appear in this *qui tam* action, has filed a brief as *amicus curiae*, in which it disdains any interest in the resolution of this particular matter, but seeks clarification or reversal of certain findings allegedly made by this Court in its decision granting summary judgment to Defendants.

 To prevail on a motion for reconsideration, the movant must demonstrate "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *See Doe v. New York City Dept. of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir.1983). The court's review "is narrow and applies only to already-considered issues; new arguments and issues are not to be considered." *See Morales v. Quintiles Transnational Corp.*, 25 F.Supp.2d 369, 372 (S.D.N.Y.1998). A motion for reconsideration "is not a substitute for appeal and 'may be granted only where the Court has overlooked matters or controlling decisions which might have materially influenced the earlier decision.'" *See id.* (citations omitted).

The Relator's motion is denied. Relator does not raise a single new argument or adduce a single additional piece of evidence. Nor does she indicate that the Court has *overlooked* anything in its lengthy opinion disposing of her claims. Rather, Relator argues yet again the same points she pressed (with little or no evidentiary support, despite the posture of the case) in opposition to the original motion. Relator thinks I am wrong. I think I am right. The Second Circuit will no doubt have the last word on the subject. But this busy Court hardly needs to redo work it has already done just because the losing party is dissatisfied with the result.

The United States approaches the Court far too late in the day for me to give its papers serious consideration. This action

is over seven years old. The Government has repeatedly declined to intervene and take over the prosecution. When the case was reassigned to me last summer, I invited the Government to make a final decision by a date certain—*before* I undertook the arduous task of familiarizing myself with an extensive record and disposing of the pending summary judgment motion. The Government declined to do so. If it had something to say to me on a subject it obviously considers to be of some importance (even though it has no interest in Relator's particular situation), it should have accepted my earlier invitation. The Court would have welcomed the Government's expertise and guidance at that point. I cannot say I am happy to have it now.

The amicus brief (which, presumptuously, was not even accompanied by an application for leave to present it) asserts that the Court misapprehended two points. After reading it, and rereading my decision of November 18, I am persuaded that it is the Government that misapprehends the import of the Court's decision.

 First, the Government seems to be under the misimpression that this Court ruled that the "false implied certification" doctrine precluded False Claims Act cases for Medicare items and services "not reasonably necessary" for the treatment of illness or injury. (Amicus Br. at 6.) This Court articulated no such ruling. Relator did contend in her pleading that Defendants submitted Medicare reimbursement claims for unnecessary testing, but she failed to substantiate that charge with so much as a scintilla of evidence—a fact I certainly did not "overlook" or "misapprehend" in my ruling.

The Government then cites me to *Goodman v. Sullivan*, 891 F.2d 449, 450 (2d Cir.1989), in which that Court noted that

F.Supp.2d 139, 152 (E.D.N.Y. 1999) (quoting 10 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2654). The invocation of Rule 54(b)

on the present motion thus seems rather perplexing, given that no claims or parties remained in this action after I granted summary judgment against Relator.

the Secretary of Health and Human Services has interpreted the phrase "reasonable and necessary" to preclude coverage for "unproven treatments or diagnostic methods not generally accepted by the medical profession." (Amicus Br. at 7.) No such issue was presented in this case. Relator did not contend that spirometry was an unproven treatment or a diagnostic method not generally accepted by the medical profession. She contended that Defendants did not calibrate their spirometers properly, in accordance with a particular medical society's recommendations, which she claimed was the appropriate standard of care in the profession. That is an entirely different question, and one that falls far outside the ambit of the False Claims Act, as the Seventh Circuit held in *Luckey v. Baxter Healthcare Corp.*, 183 F.3d 730 (7th Cir.1999). The Government is correct when it states, "Neither the [Medicare] statute, regulations or the Manual purport to specify how all recognized medical procedures deemed compensable under Medicare Part B are to be performed." (Amicus Br. at 7.) It is precisely because the Secretary does not tell doctors how to perform procedures that a *qui tam* action brought under the False Claims Act is a particularly ill-suited vehicle for deciding how they ought to be performed.[2]

Whether medical providers are required to certify compliance with Medicare each time they file or just the first time they file is beside the point. The point, which the Government apparently misapprehends, is that the certifications in this case—including any pre-certification made as part of Defendants' original Health Care Provider/Supplier Application (the text of which is set out in Amicus Br. at 10)—did not, either explicitly or implicitly, suggest that the spirometry machines used to measure patients' lung function had been calibrated in accordance with standards that the Gov-

ernment has neither promulgated nor adopted in any statute, regulations or manual governing Medicare. I have no reason to reconsider my conclusion in this regard, and do not see it as any threat to the Government's ability to use the False Claims Act to root out legitimate fraud.

Finally, the Government urges this Court to reconsider its finding that the existence of the anti-fraud remedy specified in § 1320c–5(b)(1) and (3) of the Social Security Act preempts the False Claims Act and precludes FCA liability. I made no such finding. Rather, I found that the existence of the Medicare statute's anti-fraud remedy supported my conclusion (reached on other grounds) that compliance with § 1320c–5 did not "lay 'at the heart of' Defendants' agreement with Medicare" (Decision and Order at 9)— which, per *Luckey*, I held to be the standard for imposition of False Claims Act liability in an implied false certification case. Had I found that compliance with § 1320c–5 did lie "at the heart of" the agreement between Medicare and Defendants, and that Defendants had impliedly certified that the machines in their office met standards that the Government concedes the Secretary has not explicitly imposed on providers, then there could of course be liability under both the Medicare anti-fraud provision and the False Claims Act. Likewise, if I had determined that this was not an implied false certification case at all, but rather one in which Defendants had made an *explicit* false certification, Defendants might have been liable under both statutes. But those are not our facts.

I suspect that the reason the Government chose not to intervene in this matter is its recognition that Relator's allegations (independent of her lack of evidence to prove them and the context in which they arose) were a "stretch" under the False

---

2. By contrast, the Small Business Administration *does* tell participants in its minority-owned business program how to run their operations. *See Ab–Tech Construction, Inc. v.*

*United States*, 31 Fed.Cl. 429, 434 (1994), *aff'd*, 57 F.3d 1084 (Fed.Cir.1995). The FCA may be invoked under the implied false certification doctrine in that circumstance.

Claims Act—a suspicion that is all but confirmed by the Government's repeated disclaimer of any interest in the outcome of this specific *qui tam* action. While this Court believes that its opinion was compelled on the facts of this case and the spotty record with which I was presented, I cannot promise that others will not interpret my words in a manner more sweeping than the Government would like. The Government's protection against such a result, however, was to assist in the crafting of the opinion in the first place, not to step in and try to obtain changes wholly independent of the merits of this particular case. This Court does not sit to prepare advisory opinions that the Government can use in cases in which it *does* take an interest.

This constitutes the decision and order of the Court.