**MACKENZIE MEDICAL SUPPLY, INC., Plaintiff**

v.

**Michael O. LEAVITT, Secretary, U.S. Department of Health and Human Services, Defendant**

**No. CIV. AMD 04–2807.**

United States District Court, D. Maryland.

March 14, 2006.

Christopher W. Mahoney, Duane Morris LLP, Washington, DC, for Plaintiff.

Elisabeth Layton, United States Department of Justice Federal Programs Branch, Washington, DC, for Defendant.

## MEMORANDUM OPINION

DAVIS, District Judge.

The plaintiff, MacKenzie Medical Supply, Inc.,[1] is a supplier of durable medical equipment ("DME"), and in particular, power-operated wheelchairs. In its three-count complaint, MacKenzie seeks judicial review of a determination by the defendant, the Secretary of Health and Human Services ("Secretary"), that it was overpaid $508,747.57 in Medicare reimbursement for wheelchairs it sold between September 1998 and February 1999. The defendant contends that the payments were erroneous because MacKenzie did not properly document the transactions for purposes of determining "medical necessity." The plaintiff argues that the documentation it provided, in the form of "certificates of medical necessity" ("CMN") signed by the patients' doctors, was entirely sufficient. An Administrative Law Judge ("ALJ") ruled against MacKenzie following a November 20, 2002, hearing, and, in a June 24, 2004, letter, the Medicare Appeals Council denied a request for review. Thus, the plaintiff has exhausted its administrative remedies.

Now before the court are cross-motions for summary judgment. I have carefully reviewed the parties' numerous memoranda, as well as the administrative record, and I have held an oral hearing. For the reasons explained in detail below, the plaintiff's motion shall be denied and the defendant's motion shall be granted.

---

1. MacKenzie is "no longer a Medicare supplier nor is it doing any business." Administrative Record ("A.R.") 2191. However, the company remains in existence for purposes of this lawsuit.

## I. BACKGROUND

The Medicare Act, established under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395–1395gg, provides aged and disabled people with coverage for certain medical services. The Medicare Program is administered by the Centers for Medicare and Medicaid Services ("CMS"), a component of the United States Department of Health and Human Services ("HHS"). The Act has three parts: Part A covers inpatient care and related services, 42 U.S.C. §§ 1395c to 1395i–5, 42 C.F.R. Part 409; Part B covers supplementary medical insurance for services such as doctor visits, diagnostic testing and certain medical supplies, including durable medical equipment, 42 U.S.C. §§ 1395j to 1395w–4, 42 C.F.R. Part 410; and Part C covers beneficiaries obtaining services through managed care arrangements, such as HMOs, 42 U.S.C. §§ 1395w–21 to 1395w–28, 42 C.F.R. Part 422.

This case involves Part B, which covers DMEs such as the kind of motorized wheelchairs that are used in patients' homes and that are at the center of the instant controversy. 42 U.S.C. §§ 1395k, 1395x(s), 1395x(n); 42 C.F.R. § 410.38(a)-(c). Of course, Congress and the Secretary have placed limitations on coverage under Part B. 42 U.S.C. § 1395k; 13951; 1395x(s); 1395y(a)(2)-(16); 42 C.F.R. § 411.15(a)-(j). An overarching requirement of all such Medicare coverage is that the services be "reasonable and necessary" for the diagnosis or treatment of illness. 42 U.S.C. § 1395y(a)(1)(A); 42 C.F.R. § 411.15(k)(1).

In administering Part B, CMS acts through private fiscal agents called "carri-

ers." 42 U.S.C. § 1395; 42 C.F.R. Part 421, Subparts A and C, and 42 C.F.R. § 421.5(b). Carriers are private entities, generally insurance companies, that, under contract with the Secretary, perform a variety of functions, such as making coverage determinations, determining reimbursement rates and allowable payments, conducting audits of the claims submitted for payment, and rejecting or adjusting payment requests. Upon receipt of a claim for services, the carrier pays the Medicare beneficiary on the basis of an itemized bill, and pays the Medicare supplier on the basis of an assignment of the benefits executed by the beneficiary. 42 U.S.C. § 1395u(b)(3)(B). Carriers are responsible for conducting post-payment audits to make sure proper Medicare criteria have been met. When payment has been made erroneously, overpayments are assessed and recouped. 42 C.F.R. § 421.200(a)(2); *see also* 42 U.S.C. §§ 1393g(a), 1395l(j), 1395gg(b)(1); 42 C.F.R. §§ 405.370, 405.371(a)(1), (2), 405.350. The carrier in this case is Palmetta Government Benefits Administration ("Palmetta").

To obtain payment for a DME, a supplier may submit a CMN. 42 U.S.C. § 1395m(j)(2)(A). A CMN is a document that requests (1) identifying information about the supplier and beneficiary; (2) a description of the DME supplied; (3) any product code identifying such medical equipment and supplies; and (4) other administrative information (other than information relating to the beneficiary's medical condition). 42 U.S.C. § 1395m(j)(2)(A). A valid certification by a physician is also necessary. 42 U.S.C. § 1395n(a)(2)(B). A DME supplier is further required by 42 U.S.C. § 13951(e) to furnish information sufficient to support payments under Medicare Part B. The Secretary has issued several directives, through the Durable Medical Equipment Regional Carriers ("DMERCs"), advising suppliers that they must maintain medical documentation in addition to the CMNs in order to substantiate compliance with the "reasonable and necessary" requirement of the Act. In addition, 42 U.S.C. § 1395u(p)(4) allows a carrier to request a supplier to obtain additional information about a claim from a physician.

Power-operated wheelchairs are a distinct, expensive form of DME. They are approved only when the following conditions are met: (1) the patient's condition is such that, without the use of a wheelchair, the patient would otherwise be bed or chair confined; (2) the patient's condition is such that a wheelchair is medically necessary and the patient is unable to operate a wheelchair manually; and (3) the patient is capable of safely operating the controls for the power wheelchair. DMERC Manual, pp. 25.1, 25.2; A.R. 559.

## II. FACTS

Between September 1, 1998, and February 28, 1999, MacKenzie sold 135 power wheelchairs to aged and disabled people around the country. The carrier, Palmetto, initially approved and began making payments on those claims. However, alarmed by the high volume of claims submitted by MacKenzie, Palmetto eventually conducted an audit.

The audit randomly selected 30 beneficiary claims, requested all relevant medical records for those claims, and found that 29 of them failed to satisfy the requirements for medical necessity. In 21 of the claims, the medical investigator found that "the information and progress notes supplied are not sufficiently specific to warrant powered mobility within the confines of a home or apartment." A.R. 775. In the remaining eight claims that were found to be inadequate, the auditor had not received the requested physicians' surveys

and progress notes, and therefore found that medical necessity could not be established. A.R. 79. Finding that the total overpayment for the 30–claim sample was $114,448.96, the carrier applied that amount to the 135 total claims in the period in questions and determined that there was a total overpayment of $508,747.57.[2] A.R. 796.

Following the audit, MacKenzie requested that the carrier reconsider its findings. The carrier did so, and concluded that the overpayment had been correctly assessed. A.R. 664–669. MacKenzie then appealed to an ALJ, who ruled against MacKenzie. Finally, MacKenzie appealed the ALJ's decision to the Medicare Appeals Council, which upheld the ALJ's ruling by denying the request for review.

## III. ANALYSIS

The Medicare Act provides for judicial review of final decisions by the Secretary of Health and Human Services regarding benefits paid under Medicare Part B. 42 U.S.C. §§ 1395ff(a),(b). Review is to be based solely on the administrative record. 42 U.S.C. § 405(g) (incorporated by reference in 42 U.S.C. § 1395ff(b)(2)(a)). Review of the Secretary's decision is governed, moreover, by the Administrative Procedure Act, 5 U.S.C. §§ 701–706, which provides that the Agency's decision will be set aside only if it found to be "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law... or unsupported by substantial evidence." 5 U.S.C. § 706(2)(A),(E); *Natural Resources Defense Council v. U.S. Environmental Protection Agency*, 16 F.3d

1395, 1400 (4th Cir.1993). Broad deference is particularly warranted when, as here, the regulation concerns a "complex and highly technical regulatory program." *Thomas Jefferson v. Shalala*, 512 U.S. 504, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994), (quoting *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 697, 111 S.Ct. 2524, 115 L.Ed.2d 604 (1991)). The Agency's interpretation must be given "controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Id.* (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945)). Because the facts are restricted to those in the administrative record, the court here is primarily concerned with issues of law.

Plaintiff MacKenzie essentially puts forth three arguments to demonstrate that the Secretary is erroneously trying to recoup the money paid for the wheelchairs. First, MacKenzie argues that Congress unambiguously intended that suppliers be required to submit only a CMN to demonstrate that an item is medically reasonable and necessary. Second, MacKenzie asserts that any liability alleged by the Secretary must be waived because it did not know and could not reasonable have been expected to know that payment would not be made for the equipment supplied. Finally, the plaintiff argues that the defendant's requirement that MacKenzie obtain and submit patients' medical records to substantiate medical necessity violates the Paperwork Reduction Act, 44 U.S.C. § 3501, *et seq.* I will consider each of these arguments in turn.

---

**2.** According to the defendant, following the audit, CMS withheld $169,387.05 in payments that otherwise would have been made to MacKenzie, leaving an overpayment of $339,360.52. In addition, the defendant asserts that MacKenzie must pay interest on that amount at a rate of 13.875 percent for

each 30–day period in which the plaintiff failed to pay back the remaining overpayment, as required by 42 C.F.R. § 405.378. The court here is not concerned with the exact amount due, however, because the relief plaintiff seeks—reversal of the Secretary's decision—is declaratory in nature.

## A.

 MacKenzie's first argument is one of statutory construction, and for that inquiry the court will apply the test put forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Under *Chevron,* the court must first ask whether the statute speaks directly to the issue. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43, 104 S.Ct. 2778. If the statute does not directly address the subject in question—if it is "silent or ambiguous" with respect to the specific issue—then the court does not just make its own determination. *Id.* at 843, 104 S.Ct. 2778. "Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.*

Perhaps recognizing the deference given to an agency under the second prong of *Chevron,* the plaintiff here argues that the statute in question speaks directly to the issue at hand, thereby ending the *Chevron* inquiry before the defendant agency can benefit from judicial deference.

The statute at issue here is 42 U.S.C. § 1395m(j), part of which reads as follows:

(B) Definition

For purposes of this paragraph, the term "certificate of medical necessity" means a form or other document containing information required by the carrier to be submitted to show that an item is reasonable and necessary for the diagnosis or treatment of illness or inju-

ry or to improve the functioning of a malformed body member.

42 U.S.C. § 1395m(j)(2)(B).

The defendant, relying at least partially on *Maximum Comfort v. Thompson,*[3] 323 F.Supp.2d 1060 (E.D.Cal.2004), argues that the above section clearly demonstrates that "Congress has ... stated in unequivocal terms that the CMN is the documentation required of a supplier to show that an item is medically reasonable and necessary." Pl.'s Mot. for Summ. J. at 22. MacKenzie continues: "Under *Chevron,* that is the end of the inquiry." *Id.*

I am not convinced, however, that this section, and other provisions under § 1395, speak directly to the issue of whether a CMN is the *only* documentation required for a supplier to show medical necessity. Moreover, it is not clear from the statute whether and to what extent the agency or the carrier may request additional documentation when it finds that a particular CMN is insufficient.

More specifically, the plaintiff's argument is undermined by the fact that the section upon which it largely relies, 42 U.S.C. § 1395m(j)(2)(B), is a *definition* section. Therefore, on the surface at least, the purpose of the section is to define the term "certificate of medical necessity." That said, it is certainly not clear if Congress, when it enacted the measure, intended that the section serve a second role: to mandate that the CMN serve as the exclusive and final documentation required for proof of medical necessity. It seems more likely, rather, that if Congress had desired to prescribe such a requirement, it would have done so in a separate section—a section that did not have above it the heading "Definition." Therefore, this section is better read not to require a

---

**3.** *Maximum Comfort,* which confronts the same issue as the instant litigation, is on

appeal to the United States Court of Appeals for the Ninth Circuit.

carrier to distribute a CMN, but to authorize a carrier to do so *with certain limitations*. *See* 42 U.S.C. § 1395m(j)(2)(A) (allowing a CMN to contain only (1) identifying information about the supplier and the beneficiary, (2) a description of the DME supplied, and (3) other administrative information not related to the beneficiary's medical condition). At the very least, the purpose of the section is ambiguous.

In this respect, I agree with the ALJ's statement that "the CMN … represents nothing more than a Medicare pre-payment tool which has been abbreviated as much as possible to save paperwork, to … allow systems generated evaluation of claims, and to effect as rapid and accurate claims processing turnaround as possible." A.R. 39.

Another section disputed in this lawsuit is likewise ambiguous. Under 42 U.S.C. § 1395u(p)(4), if the Secretary requires "diagnostic or medical information in order for payment to be made," a supplier must comply. This would appear to support the right of the Secretary to request additional information from the supplier. MacKenzie, however, argues that this section has no bearing on a right of review *after* the transaction has been completed, as is the case here, because the section states that "the physician or practitioner shall provide that information to the entity *at the time that the item or service is ordered by the physician or practitioner.*"[4] 42 U.S.C. § 1395u(p)(4) (italics added for emphasis).

Although this argument has some merit, it ultimately underscores the ambiguity of the statute. For one, the section does not *explicitly* preclude the Secretary from seeking information at any time. Second, the section seems to place a limitation on the physician-requiring him to provide the documentation *at the time the item is ordered-* rather than placing a limitation on the Secretary. Nevertheless, the section does seem to reserve to the Secretary a right to request diagnostic or medical information such as he has done in the instant case by asking MacKenzie to further document its claim that the motorized wheelchairs were medically necessary. That is entirely consistent with other provisions in § 1395, such as § 1395u(a)(1)(C) (authorizing carriers to "make such audits of the records of providers of services as may be necessary to assure that proper payments are made under this part") and § 1395u(a)(1)(B) (authorizing carriers to "assist in the application of safeguards against unnecessary utilization of services furnished by providers or services and other persons to individuals entitled to benefits").

Finally, the interpretation of the CMN and other documentation requirements offered by the plaintiff simply does not make sense. As the defendants point out, if the Secretary were only able to look to the CMN to determine medical necessity, and if the Secretary had no power of review to look any further, the Secretary could never deny a claim when the physician had written a prescription. That would undermine the role of the Secretary in the Medicare system. *See Heckler v. Ringer* 466 U.S. 602, 617, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984) ("The Secretary's decision as to whether a particular medical service is

---

4. McKenzie also argues that § 1395u(p)(4) cannot be raised as a "post hoc rationalization for agency action" because it was not considered by the ALJ. This is a fallacious argument. When seeking to determine the meaning of § 1395m(j)(2)(B), or other sec-

tions pertaining to documentation of medical justification for power wheelchairs, it is entirely proper for the court to consider other related sections, regardless of whether they were mentioned in the ALJ's opinion or raised by the defendant in its administrative appeals.

'reasonable and necessary' and the means by which she implements her decision, whether by promulgating a generally applicable rule or by allowing individual adjudication, are clearly discretionary decisions."). Moreover, courts have upheld judgments by the Secretary finding medical care and equipment to be unreasonable or unnecessary. *See, e.g., Goodman v. Sullivan,* 891 F.2d 449, 451 (2d Cir.1989) (denying coverage of MRIs); *Friedrich v. Secretary of Health and Human Services,* 894 F.2d 829, 831 (6th Cir.1990) (excluding coverage of atherosclerosis therapy); *Santurce Pharmaceutical Corp. v. Secretary of Health and Human Services,* 2005 WL 1711661, *3 (N.D.Miss. July 25, 2005) (upholding an ALJ's determination that DME was not covered because medical necessity had not been properly documented). *Gulfcoast Medical Supply, Inc. v. Secretary, United States Department of Health and Human Services,* 8:04–cv–2610, 2005 WL 3934860 (M.D.Fla. Nov. 16, 2005) (ordering a denial of coverage for power wheelchairs because of insufficient documentation of medical necessity).

For the above reasons, I find that Congress has not unambiguously mandated that the CMN is the only document that can be required of a supplier to show medical necessity. That being the case, under *Chevron,* the court must next consider whether the Secretary's interpretation of the statute is permissible. *Chevron,* 467 U.S. at 843, 104 S.Ct. 2778. I find that it is. It is clear that, based on the reasons outlined above, the Secretary acted reasonably in assuming the authority to require additional documentation from providers to make a correct determination of medical necessity. In addition, it is entirely reasonable that the Secretary concluded, more generally, that a CMN is not necessarily the one and only document that a supplier must produce to prove medical necessity. I therefore reject the plaintiff's first challenge to the Secretary's finding that MacKenzie was overpaid for the wheelchairs it sold between September 1998 and February 1999.

### B.

■ Next, MacKenzie argues that any liability it may have incurred must be waived because it did not know that payment would not be made. For this argument the plaintiff relies on § 1395pp(a), which provides that, when a payment is declined because the equipment is deemed unnecessary, and the supplier "did not know, and could not have reasonably been expected to know, that payment would not be made for such items or services," then "payment shall, notwithstanding such determination, be made for such items." 42 U.S.C. § 1395pp(a).

Whether the plaintiff knew or could have reasonably been expected to know that payments would not be made is a question of fact. For that reason, I must review the ALJ's findings and determine whether they are "unsupported by substantial evidence." 5 U.S.C. § 706(2)(E); *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962) ("The agency must make findings that support its decision, and those findings must be supported by substantial evidence."). Substantial evidence is evidence that a reasonable person would accept as adequate to support a finding. *Austin v. Shalala,* 994 F.2d 1170, 1174 (5th Cir.1993)(citing *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)); *Santurce Pharmaceutical Corp. v. Secretary of Health and Human Services,* 2005 WL 1711661, *6 (N.D.Miss. July 21, 2005). I conclude that the ALJ's findings are supported by substantial evidence, and therefore this argument fails.

In reaching her decision on the waiver issue, the ALJ relied on agency guidelines and direct witness testimony. The ALJ noted that MacKenzie "ignored guidelines in the [durable medical equipment, prostheses, orthoses and supplies] manual advising suppliers that if clinical records were not available to support a CMN, payment could be denied." A.R. 43–44. The ALJ noted that, even if MacKenzie did not have actual notice of such publications, as a participating Medicare supplier, notice is imputed of such publications. *Id.* The ALJ quoted a 1996 advisory that read:

> [I]t is the responsibility of those supplying beneficiaries with durable medical equipment ... to assure claims billed to Medicare have proper documentation accurately reflecting the beneficiary's medical condition as it relates to Medicare coverage criteria by which claims are adjudicated by the [DMERC]. Even if a supplier has a physician order on file, failure of the patient's medical records to substantiate the condition for which Medicare approved reimbursement subjects the supplier to liability.

A.R. 44.

The ALJ also considered testimony from the administrative hearing. From that hearing, the ALJ noted that MacKenzie's billing clerk, Kimberly Radford, testified that she and the president of MacKenzie, Lynn Moura, "read manuals together, read the updates and made sure that the field representatives were updated on all of the updates for that year." A.R. 2241. In addition the ALJ found that Radford and Moura "created a system of commissions and billing practices for MacKenzie Medical Supply representatives which allowed for little oversight of the [representatives'] solicitation of power operated wheelchair sales." A.R. 44.

The above findings by the ALJ are supported by substantial evidence. For that reason, I find that the ALJ's findings of fact are unassailable and the plaintiff is not entitled to a waiver of its liability under 42 U.S.C. § 1395pp(a).

## C.

■ Finally, MacKenzie claims that the Paperwork Reduction Act ("PRA") prevents the Secretary from requesting additional medical records to substantiate the plaintiff's claims of medical necessity. Under the PRA, the Government is prohibited from sponsoring a "collection of information" unless certain procedures are followed, including an opportunity for public comment, approval from the Office of Management and Budget and the display of a "control number" on the request. 44 U.S.C. §§ 3506(c)(2), 3507(a) & (c); 5 C.F.R. §§ 1320.3 & 1320.5. However, as the Secretary points out, the PRA is inapplicable "during the conduct of (i) a civil action to which the United States or any official or agency thereof is a party or (ii) an administrative action or investigation involving an agency against specific individuals or entities." 44 U.S.C. § 2518(c)(1)(B). I find that the latter provision exempts the Secretary's request for documentation in this case.

For one thing, although the word "audit" is not mentioned specifically in the exception to the PRA, an audit certainly must be considered to be a subset of an "investigation." *See Shell Oil Co. v. Babbitt,* 945 F.Supp. 792, 807 (D.Del.1996) ("The PRA specifically exempts activities such as an [Minerals Management Service] audit from its requirements.").

In addition, contrary to MacKenzie's argument, the Secretary has not issued an information request "to an entire class of individuals." Pl.'s Reply in Opp. to Def.'s Mot. for Summ. J. at 24. Rather, here the

audit explicitly targeted MacKenzie because MacKenzie was submitting an unusually high rate of requests for power wheelchairs. A.R. 20, 1073–77. In addition, about 30 percent of payments from those requests come from a single doctor's referrals. *Id.* This request certainly falls under the investigatory exception to the PRA.[5]

## IV. CONCLUSION

I find that the Secretary acted consistently with the Medicare Act when it requested addition documentation from the plaintiff in order to prove medical necessity. The claim of overpayment asserted by the Secretary is not waived, moreover, because the plaintiff was on notice that it should retain documentation proving medical necessity. Finally, the Paperwork Reduction Act does not prevent the Secretary from requesting the information that it needed to complete its audit of MacKenzie.

For these reasons, the plaintiff's motion for summary judgment shall be denied and the defendant's motion for summary judgment shall be granted, and the Order under review affirmed.

---

**5.** In addition, if the court were to apply *Chevron* and find that the statute is ambiguous, agency deference would be merited here. It is certainly reasonable for the Secretary to interpret the PRA as it has to allow the audit of MacKenzie.