In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3494

VISITING NURSES ASSOCIATION OF
SOUTHWESTERN INDIANA, INC.,
and VISITING NURSES HEALTH CARE, INC.,

Plaintiffs-Appellants,

v.

DONNA E. SHALALA, Secretary, United States
Department of Health & Human Services,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Indiana,
Indianapolis Division.
No. 99 C 1260--David F. Hamilton, Judge.

Argued February 25, 2000--Decided May 17, 2000

Before BAUER, RIPPLE and MANION, Circuit Judges.

RIPPLE, Circuit Judge.  The appellants, two
providers of health care services in southern
Indiana, sought an injunction that would halt the
Government's efforts to recoup overpayments made
to them through the Medicare program. The
district court held that the service providers
had failed to state a claim because the statutory
section under which they sought relief did not
allow providers to seek a waiver of their
liability to the Government. The district court
also determined that, even if a waiver was
permitted by the statute, the service providers
could not obtain relief because they were not
"without fault" within the meaning of the
statute. We agree that the service providers have
failed to state a claim upon which relief can be
granted. Therefore, for the reasons set forth in
the following opinion, we affirm the judgment of
the district court.

I

BACKGROUND

       The Visiting Nurses Association of Southwestern
Indiana of Evansville, Indiana ("VNA"), and

Visiting Nurses Health Care, Inc. of Anderson, Indiana ("VNHC"), collectively "the Providers," have both participated in the Medicare program for about 30 years. As certified providers of home health services to Medicare beneficiaries, VNA and VNHC are required to provide services to homebound patients. The Providers periodically receive reimbursement from the Government through interim payments. These interim payments are based on the provider's estimated reimbursable costs. At the end of the year, a calculation is made of the provider's actual allowable costs for the previous year. If the provider was overpaid or underpaid, adjustments are made to future payments. Interim payments may also be adjusted during the fiscal year if the provider and its fiscal intermediary decide that the payments do not reflect the provider's actual costs. According to the statute, these payments to providers are made for the benefit of the ultimate beneficiary. See 42 U.S.C. sec. 1395gg(a).

In 1997, Congress enacted the Balanced Budget Act. See Pub. L. 105-33, 111 Stat. 251. One of its provisions altered the reimbursement scheme for providers such as VNA and VNHC./1 Under the new reimbursement program, the Providers would receive the least of: (1) the provider's actual cost per visit; (2) a capped amount of cost per visit; or (3) a cap on payment for services based on an annual aggregate per-beneficiary limit ("PBL"). The PBL is determined by the Health Care Financing Administration ("HCFA"), a unit of the Department of Health and Human Services. The new PBL capped the amount of annual payments to home health providers for all services provided to any beneficiary, regardless of the level of or cost of services provided. In promulgating the PBL, the HCFA acknowledged that it would create hardship for home health care providers. Nonetheless, the HCFA warned providers not to discriminate against individual Medicare beneficiaries based on their status as program enrollees.

Both VNA and VNHC anticipated a 15% reduction in Medicare funding in the wake of the Balanced Budget Act, and undertook significant cost-cutting measures. On June 1, 1998, VNA was advised of a PBL for Indiana and Kentucky patients of $2,663.93, and for Illinois patients of $2,471.69. That same day, VNHC was advised of its PBL of $3,895.78. Both providers had underestimated the severity of the funding cuts. The Providers' interim payments had not been adjusted downward at the beginning of the time period covered by the benefit reductions, and, thus, when the benefit reductions were announced, the Providers were faced with a situation in

which they had been substantially overpaid. The HCFA informed VNA in early 1999 that its overpayment liability for the 1998 fiscal year was $4,094,039. In December 1998, VNHC received notice of a projected overpayment of $860,593 for the 1998 fiscal year; it was later assessed an additional overpayment of $83,350.

The Providers sought relief under 42 U.S.C. sec. 1395gg, a section of the Social Security Act governing Medicare payments. They claimed that under that section they were entitled to a waiver of overpayment liability. This claim for a waiver was first rejected by the regional Medicare fiscal intermediary, Palmetto Government Benefits Administration. Subsequently, the HCFA and the Secretary of the Department of Health and Human Services ("the Secretary") declined to grant relief. The Providers then brought this action in the district court, seeking an injunction that would prevent the Secretary from recouping the overpayments.

The district court held that sec. 1395gg did not contemplate waivers of overpayments in aggregate reimbursements to health care providers but, rather, existed solely to allow waivers for individual beneficiaries. Therefore, it explained, the Providers' action could not succeed. The court then found that, even if the Providers could bring an action under sec. 1395gg, it would fail on the merits because that section requires those seeking its protection to be without fault. The district court found that the Providers were not without fault, because they could have estimated their PBL long before they were actually informed of the specific amount, and then could have reduced their expenditures to achieve compliance with the limits they ultimately received. Although the court acknowledged that the Providers had not committed any waste or fraud, and that requiring the Providers to repay the overpayments could be devastating to them, it declined to grant injunctive relief because the Providers had shown no likelihood of success on the merits. After their request for a preliminary injunction was denied, the Providers offered no further arguments, and their case was dismissed for failure to state a claim upon which relief could be granted.

II

DISCUSSION

We review de novo the district court's dismissal. See Massey v. Helman, 196 F.3d 727, 732 (7th Cir. 1999); Grzan v. Charter Hosp., 104 F.3d 116, 119 (7th Cir. 1997). In our review, we

draw all reasonable inferences in the plaintiffs' favor. See Massey, 196 F.3d at 732; Grzan, 104 F.3d at 119. We shall affirm the dismissal only if the plaintiffs would not be entitled to relief under any set of facts that could be proved consistent with the allegations. See Massey, 196 F.3d at 732.

When a Medicare provider is overpaid, the Secretary has the authority to attempt to recoup the overpayment. See 42 C.F.R. sec. 405.371(a)(2). When such an attempt occurs, the provider from whom money is being recouped is given an opportunity for rebuttal. See 42 C.F.R. sec.sec. 405.373(a)(2), 405.374(a). If a provider is dissatisfied with the ultimate result of the administrative proceedings, it may file a civil action in the district court. See 42 U.S.C. sec. 1395oo(f); Homewood Prof'l Care Ctr. v. Heckler, 764 F.2d 1242, 1245 (7th Cir. 1985). The Secretary had not yet instituted recoupment proceedings under these regulations against the Providers when they brought their claim for injunctive relief. Instead, the Providers, prior to the institution of any recoupment proceedings, brought this action, arguing that the text of 42 U.S.C. sec. 1395gg itself allows for a waiver of overpayment liability./2 The district court characterized the action as one of pure statutory interpretation; the Providers were seeking only a determination of their rights under sec. 1395gg. Neither party contests that assessment./3

Our sole task is therefore to determine whether sec. 1395gg may be the basis of the relief sought by the Providers. "As with all issues of statutory interpretation, the appropriate place to begin our analysis is with the text itself, which is the most reliable indicator of congressional intent." Bass v. Stolper, Koritzinsky, Brewster & Neider, 111 F.3d 1322, 1324-25 (7th Cir. 1997) (citations omitted). We may also look to the agency's interpretation of this statutory language because "a reasonable interpretation of a statute by the agency responsible for its administration is entitled to great deference by the judiciary." Martin v. Pav-Saver Mfg. Co., 933 F.2d 528, 530 (7th Cir. 1991). Finally, we shall consider the role of this statutory language within the broader statutory scheme. "It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the statutory scheme.'" Food & Drug Admin. v. Brown & Williamson Tobacco Co., 120 S. Ct. 1291, 1301 (2000) (quoting Davis v. Michigan Dept. of Treasury, 489 U.S. 803, 809 (1989)).

A.  Section 1395gg

The Providers argue that the text of sec. 1395gg allows for the waiver of overpayment liability for providers. As discussed above, the Providers receive reimbursements from the Medicare program. Subsection 1395gg(a) explains that these reimbursement payments are treated as payments to the individual Medicare beneficiaries:

Any payment under this subchapter to any provider of services or other person with respect to any items or services furnished any individual shall be regarded as a payment to such individual.

42 U.S.C. sec. 1395gg(a). Subsection 1395gg(b) then says that when overpayments are made, the Secretary may seek to recover those overpayments. As the statute states:

Where--

(1) more than the correct amount is paid under this subchapter to a provider of services or other person for items or services furnished an individual and the Secretary determines (A) that, within such period as he may specify, the excess over the correct amount cannot be recouped from such provider of services or other person, or (B) that such provider of services or other person was without fault with respect to the payment of such excess over the correct amount . . .
. . . .

proper adjustments shall be made, under regulations prescribed (after consultation with the Railroad Retirement Board) by the Secretary, by decreasing subsequent payments--

(3) to which such individual is entitled under subchapter II of this chapter or under the Railroad Retirement Act of 1974, as the case may be . . . .

42 U.S.C. sec. 1395gg(b) (citation omitted).

Under some circumstances, however, the Secretary should waive the recoupment of overpayments discussed in sec. 1395gg(b). Subsection 1395gg(c) sets forth the situations in which such waiver should occur:

There shall be no adjustment as provided in subsection (b) of this section (nor shall there be recovery) in any case where the incorrect payment has been made . . . with respect to an individual who is without fault . . . if such adjustment (or recovery) would defeat the purposes of subchapter II or subchapter XVIII of this chapter or would be against equity or good

conscience.

42 U.S.C. sec. 1395gg(c)./4 The providers argue that these sections do not apply only to individuals, but also to providers. Thus, they claim, these sections may entitle them to a waiver. However, as further detailed below, sec. 1395gg addresses only the rights of individual beneficiaries, not those of providers. Therefore, the Providers cannot be granted the relief they seek.

1.  Subsection 1395gg(a)

    The Providers read sec. 1395gg(a) to vest providers with the same rights as individuals. In fact, it does quite the contrary. Subsection 1395gg(a) states: "Any payment under this subchapter to any provider of services or other person with respect to any items or services furnished any individual shall be regarded as a payment to such individual." What this means is that regardless of who receives the payment in the first instance--the provider or the individual--the payment is, in legal effect, a payment to the individual. Therefore, the rights created by this section must be the individual's rights, whether or not they received their benefits from a pass-through. Consequently, we cannot adopt the Providers' proffered interpretation.

2.  Subsection 1395gg(b)

    Subsection 1395gg(b)(3) dovetails with sec. 1395gg(a). Adjustments to payments made under sec. 1395gg(b) are to payments "to which such individual is entitled." 42 U.S.C. sec. 1395gg(b)(3) (emphasis added). The entitlement to payments under sec. 1395gg(b) is the individual's, not the provider's.

    The language of sec. 1395gg(b)(1) also indicates that Congress did not intend to create any rights for providers. As set out above, sec. 1395gg(b)(1) allows adjustments to be made to payments where:

more than the correct amount is paid under this subchapter to a provider of services or other person for items or services furnished an individual and the Secretary determines (A) that, within such period as he may specify, the excess over the correct amount cannot be recouped from such provider of services or other person, or (B) that such provider of services or other person was without fault with respect to the payment of such excess over the correct amount . . . .

42 U.S.C. sec. 1395gg(b)(1). The language merely

creates prerequisites for the adjustments in payments to the individual beneficiaries. Subsection 1395gg(b)(1)(A) allows the Secretary to recover money from individuals directly if she cannot recover it from the provider of services./5 According to sec. 1395gg(b)(1)(B), if the provider of services was without fault in the overpayment, adjustment may be made to the individual's payment. These subsections, sec. 1395gg(b)(1)(A) and (B), set forth the conditions precedent that must be satisfied before recovery from an individual may be undertaken; they do not create any entitlement to funds on the part of the providers.

3.   Subsection 1395gg(c)

a.

Because the only adjustment contemplated by sec. 1395 gg(b) is an adjustment of payments to individuals, no waiver under sec. 1395gg(c) is possible for these providers. Subsection 1395gg(c) explicitly applies only to the waiver of "adjustment[s] as provided in subsection (b) of this section." 42 U.S.C. sec. 1395gg(c). The adjustments made to the payments is, as we have stated, an adjustment only to the payments to the individual, and no rights of the providers are implicated by that adjustment.

Even if sec. 1395gg(b) could apply to providers, meaning that sec. 1395gg(c) also could apply to providers, the language of sec. 1395gg(c) precludes waiver based on the provider's lack of fault. The waiver clause only applies when "an incorrect payment has been made . . . with respect to an individual who is without fault."/6 42 U.S.C. sec. 1395gg(c) (emphasis added). We cannot accept the Providers' argument that "individual," in this context, means "individual or provider." The language of sec. 1395gg consistently refers to individuals and providers as separate entities. Indeed, in sec. 1395gg(b), Congress specifically refers to providers of services who are without fault, whereas here the reference is to individuals without fault. Thus, "individual" in sec. 1395gg(c) cannot mean "individual or provider."

b.

The regulations promulgated by the Secretary support the distinction between "individual" and "provider" rights. It has long been recognized that courts should accord considerable weight to an executive department's construction of a statutory scheme it is entrusted to administer. See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837, 844 (1984); City of Chicago v. Federal Communications Comm'n, 199

F.3d 424, 429 (7th Cir. 1999). This is particularly true when Congress has specifically delegated authority to the Secretary to construe the statute. See United States v. Morton, 467 U.S. 822, 834 (1984); Batterton v. Francis, 432 U.S. 416, 425 (1977); Haywood v. North Am. Van Lines, 121 F.3d 1066, 1069 (7th Cir. 1997). This statute delegates to the Secretary the authority to "prescribe such regulations as may be necessary to carry out the insurance programs" under the subchapter that includes sec. 1395gg. See 42 U.S.C. sec. 1395hh(a); St. Francis Hosp. Ctr. v. Heckler, 714 F.2d 872, 878 (7th Cir. 1983). In this case, the Providers have not argued that the Secretary's regulations are contrary to the statute./7

Two aspects of the recoupment regulations confirm the distinction between individual and provider rights outlined above. First, the Secretary has developed two different regulatory schemes for determining and recouping overpayments from individuals and providers. Compare 42 C.F.R. sec.sec. 405.350-59 (individuals) with id. at sec.sec. 405.370-78 (providers). If the overpayment was to an individual, the Secretary may seek an adjustment pursuant to 42 C.F.R. sec. 405.352, which applies "[w]here an individual is liable for an incorrect payment." Id. If the Secretary proceeds against the provider, however, she must act pursuant to 42 C.F.R. sec. 405.371(a), which says that:

Medicare payments to providers and suppliers, as authorized under this subchapter (excluding payments to beneficiaries), may be--

. . . .

(2) Offset or recouped, in whole or in part, by an intermediary or a carrier if the intermediary, carrier, or HCFA has determined that the provider or supplier to whom payments are to be made has been overpaid.

Id. The existence of separate regulatory schemes for recoupment from individuals and providers makes it clear that the two acquire separate rights under the statute.

In addition, the regulations set forth different "waiver" procedures for individuals and providers. The provision allowing individuals to seek waivers of overpayments, 42 C.F.R. sec. 405.355, tracks the language of sec. 1395gg(c):

(a) The provisions of sec. 405.352 may not be applied and there may be no adjustment or recovery of an incorrect payment . . . in any case where such incorrect payment has been made

with respect to an individual who is without fault, or where such adjustment or recovery would be made by decreasing payments to which another person who is without fault is entitled as provided in section 1870(b) of the Act where such adjustment or recovery would defeat the purpose of title II or title XVIII of the Act or would be against equity and good conscience. . . .

(b) Adjustment or recovery of an incorrect payment (or only such part of an incorrect payment as may be determined to be inconsistent with the purposes of Title XVIII of the Act) against an individual who is without fault shall be deemed to be against equity and good conscience if the determination that such payment was incorrect was made subsequent to the third year following the year in which notice of such payment was sent to such individual.

42 C.F.R. sec. 405.355 (emphasis added). There can be no question that the issue of "fault" raised here is fault only on the part of the individual, not fault on the part of the provider. See 20 C.F.R. sec. 404.507 ("'Fault' as used in 'without fault' (see [20 C.F.R.] sec. 404.506 and 42 C.F.R. sec. 405.355) applies only to the individual.").

A different procedure is used for providers who seek to block the recoupment of overpayments. When a recoupment from a provider is sought pursuant to 42 C.F.R. sec. 405.371(a)(2), the intermediary or carrier seeking recoupment must "[g]ive the provider or supplier an opportunity for rebuttal in accordance with sec. 405.374." 42 C.F.R. sec. 405.373. Under sec. 405.374, the intermediary or supplier must give notice of when the recoupment will go into effect, and then "must give the provider or supplier an opportunity, before the . . . recoupment takes effect, to submit any statement (to include any pertinent information) as to why it should not be put into effect on the date specified in the notice." 42 C.F.R. sec. 405.374.

When one compares the "waiver" procedures for individuals to that for providers, the differences are evident. The procedure for individuals does, in fact, "waive" rights to recoupment of overpayments to which the Secretary is otherwise entitled; 42 C.F.R. sec. 405.355 prohibits the Secretary from seeking an "adjustment or recovery of an incorrect payment . . . with respect to an individual who is without fault." By contrast, the procedure for providers is more appropriately characterized as a remonstrance provision. It identifies the process that the Secretary must follow in seeking recoupment and that the provider must follow in

contesting that determination. The procedure, however, does not contain any waiver of the Secretary's rights; the regulations do not set forth circumstances under which the Secretary is prohibited from seeking recoupment. Noticeably absent from the procedure for providers is any discussion of "fault" on the part of the provider.

The existence of separate regulatory recoupment schemes for individuals and providers makes it clear that 42 U.S.C. sec. 1395gg(c)'s waiver provision for an "individual who is without fault" applies only to individuals. The statute and the regulations consistently differentiate between individuals and providers. As well, the recoupment schemes for individuals and providers bear little resemblance to one another. Therefore, the regulations confirm that waiver of overpayment liability for providers is not contemplated by sec. 1395gg(c).

B.   The Statutory Structure

A comparison of sec. 1395gg to other provisions of the Medicare statute also persuades us that, when Congress intended to give providers a remedy, it did so explicitly. In 42 U.S.C. sec. 1395oo, Congress established a Provider Reimbursement Review Board, whose powers include the authority to hear appeals from providers dissatisfied with the amount of money they have received. See 42 U.S.C. sec. 1395oo(a)(1)(A). No appeals process for providers is discussed in sec. 1395gg.

In 42 U.S.C. sec. 1395pp, Congress specifically allows providers to exercise the rights of individuals under certain sections of the statute "after the Secretary determines that the individual will not exercise such rights under such sections." 42 U.S.C. sec. 1395pp(d). The list of sections under which providers may exercise the rights of individuals does not include sec. 1395gg. Section 1395pp demonstrates that when Congress intended for providers to exercise the rights of individuals, it created a mechanism for them to do so. It also shows that Congress did not intend for providers to exercise the rights of individuals under 42 U.S.C. sec. 1395gg because the mechanism allowing for the exercise of individual rights by providers does not apply to that section. That this mechanism does not apply to 42 U.S.C. sec. 1395gg is a strong indication that Congress did not intend for providers to exercise the rights granted to individuals under that section./8


Conclusion

For the foregoing reasons, the judgment of the district court is affirmed./9

Affirmed


/1 Challenges to the new reimbursement scheme as unconstitutional have been rejected. See Vermont Assembly of Home Health Agencies v. Shalala, 18 F. Supp.2d 355 (D. Vt. 1998); Greater Dallas Home Care Alliance v. United States, 10 F. Supp.2d 638 (N.D. Tex. 1998). The Providers have not raised such an argument here.

/2 The Secretary argued to the district court that any relief should wait until the Secretary had been given a chance to pursue regulatory remedies:

VNA and VNHC have brought this action solely to avoid repaying overpayments due and to recover overpayments already returned arising out of their 1998 Medicare cost reports. The final settlement of those cost reports has not yet been completed. Any challenges to those cost reports should be done in accordance with the administrative remedies provided by the Medicare Act.

R.19 at 14.

/3 We thus have no occasion to consider whether the Providers may be able to obtain waiver of their overpayment liability through the regulations promulgated by the Secretary. We also do not address the central question faced by the Fifth Circuit in Mount Sinai Hosp. of Greater Miami, Inc. v. Weinberger, 517 F.2d 329 (5th Cir. 1975), that sec. 1395gg did not abrogate the Secretary's common-law right to recoup overpaid funds from providers. See id. at 345.

/4 This section is described elsewhere in the statute as providing a mechanism for a waiver of recoupment. See 42 U.S.C. sec. 1395 gg(d) ("No certifying or disbursing officer shall be held liable for any amount certified or paid by him to any provider of services or other person where the adjustment or recovery of such amount is waived under subsection (c) of this section.") (emphasis added). See also Zinman v. Shalala, 67 F.3d 841, 853 & n.1 (9th Cir. 1995) (describing sec. 1395gg(c) as a waiver clause).

/5 Accord Mount Sinai, 517 F.2d at 340 (describing sec. 1395gg(b) as permitting "a narrow category of recovery from beneficiaries").

/6 In the alternative, it may apply when the

adjustment would be made by decreasing payments to which another person who is without fault is entitled. See 42 U.S.C. sec. 1395gg(c). The Providers have not argued that this language is applicable to their claim.

/7 Because this is not a challenge to a regulatory scheme, 42 U.S.C. sec. 405(h) is not a bar to federal question jurisdiction, as it was in Shalala v. Illinois Council on Long Term Care, Inc., 120 S. Ct. 1084 (2000). See also Chaves County Home Health Serv., Inc., 931 F.2d 914 (D.C. Cir. 1991) (challenge to Medicare regulatory scheme).

/8 The Second Circuit has noted the distinction between the two different kinds of waiver contemplated by sec. 1395gg and sec. 1395pp:

When there is a denial of coverage, there may be no recovery or recoupment from an individual who is "without fault" in accepting benefits later denied. 42 U.S.C. sec. 1395gg. Providers may also obtain a waiver of liability for coverage of individual claims where they neither knew nor had reason to know that services rendered constituted noncovered care. 42 U.S.C. sec. 1395pp(a).

Kraemer v. Heckler, 737 F.2d 214, 216 (2d Cir. 1984).

/9 Because we hold that Congress created no rights for providers under sec. 1395gg, we need not address the issue of whether there was any "fault" on the part of the Providers.